UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LAURA M. SHELDON,

       Plaintiff,

                                 Case Number 11-10487

v.

                                 Honorable Thomas L. Ludington

THOMAS J. VILSACK, Secretary of the
Department of Agriculture, et al.,

       Defendants.

_____/

**ORDER GRANTING THE FEDERAL DEFENDANTS' MOTION TO DISMISS,
DISMISSING PLAINTIFF'S CLAIMS WITH PREJUDICE, DENYING PLAINTIFF'S
MOTION FOR LEAVE TO FILE A SUR-REPLY, DENYING PLAINTIFF'S MOTION
FOR LEAVE TO FILE A SUPPLEMENTAL MEMORANDUM, DENYING
PLAINTIFF'S MOTION TO STRIKE THE DECLARATION OF TINA FARLOW, AND
DENYING AS MOOT PLAINTIFF'S MOTION FOR RECONSIDERATION**

In July 2008, Plaintiff purchased a home for $39,000 with a $47,100 loan secured from a

private lender, JP Morgan Chase Bank, N.A. ("J.P. Morgan").  The real property is located at 502

East Hazel Street, Saint Louis, Michigan (the "Property"). Verified Compl. ("Compl.") ¶¶ 10, 15,

28. Under its Guaranteed Loan Program, the Rural Housing Service ("RHS") provides private

lenders with a loan guarantee of 90% of the principal amount of the loan. *Id.* ¶¶ 10, 18, 28, 30.

Plaintiff's loan from JPMorgan Chase Bank, N.A. is serviced by Chase Home Finance, LLC

(collectively, the "Chase Defendants"). *Id.* ¶ 15. In November 2009, Chase provided Plaintiff a

three-month forbearance for reasons that will be explained hereafter. *Id.* ¶¶ 39, 47. When Plaintiff

was unable to make payments after the end of the forbearance period, Chase scheduled a foreclosure

sale for February 17, 2011. *Id.* ¶ 1.

On February 7, 2011, Plaintiff filed her eight-count complaint. Count VIII is the sole count brought against the Chase Defendants. Plaintiff alleged in Count VIII that the Chase Defendants' developed a fiduciary relationship with Plaintiff, that they breached that duty, and that, as a result, the foreclosure sale scheduled for February 17, 2011, should be enjoined. In Counts I through VI, Plaintiff sought a declaratory ruling that the Secretary of Agriculture and RHS violated various provisions of the Housing Act of 1949, 42 U.S.C. § 1441 et seq., that were actionable under the Administrative Procedures Acts ("APA"). Finally, in Count VII, Plaintiff also sought a declaratory judgment determining that RHS denied Plaintiff due process "by failing to provide [Plaintiff] with notice of adverse decisions or a right to appeal those decisions." The various provisions of the Housing Act of 1949 that Plaintiff alleges the Federal Defendants violated are as follows:

Count I – Section 505(a) of the Housing Act: Section 505(a) of the Housing Act, 42 U.S.C. § 1475(a) was enacted by Congress in 1949 and provided, in relevant part, that "during any time that any such loan is outstanding, the Secretary [of Agriculture] is authorized under the regulations to be prescribed by him to grant a moratorium upon the payment of interest and principal on such loans . . . ." Plaintiff alleges that the Secretary and RHS have violated the APA by failing to grant her a moratorium for repayment of her guaranteed loan, which was authorized by Congress in 1990.

Count II – Section 501 and 502 Provisions for Refinancing Loans in Default: Sections 501(a) of the Housing Act of 1949, 502(h)(9)[1] and 502(h)(17) of the Housing Act provide for RHS to refinance loans that are in default. Plaintiff alleges that the Secretary and RHS have violated the APA by failing to implement the statutory provisions and her "right to have her guaranteed loan refinanced by another guaranteed loan or by a direct and subsidized RHS loan."

Count III – Section 502(h)(15), 502(h)(17) and 517 for Assignment of Plaintiff's Loan and Reamortization of her Payments: Somewhat similar to Count II, Plaintiff cites three different provisions of the Housing Act, 502 (h)(15), 502(h)(17) and 517, that provide in part for "a program for assignment to the Secretary" and for "refinancing." Plaintiff alleges that the Secretary and RHS never implemented these

---

[1]Subsection (h) was originally added to Section 502 of the Housing Act, 42 U.S.C. § 1472, in 1990. Pub. L. 101-625, § 706(b) (1990) and modified by amendments in 1991, 1992, 1998, 2000, 2004, 2009 and 2010. *See* 42 U.S.C.A. § 1472 (West 2010) (outlining the statutory section's legislative history).

statutory provisions, violating the APA because she was entitled to have her loan "assigned to the RHS" in order "to reamortize her loan."

Count IV – Section 502(h)(13) Alternative to Foreclosure: Section 502(h)(13), Pub. L. 106-569, § 701 (2009), provides in relevant part that "upon default of any mortgage guaranteed under this subsection, mortgagees shall engage in loss mitigation actions for the purpose of providing an alterative to foreclosure . . . as provided by the Secretary." Plaintiff alleges that the Secretary and RHS failed to require Chase to provide her an alternative to foreclosure.

Count V – Section 502(h)(14) Provision for Modification of Mortgages and Payment of a Partial Claim: Section 502(h)(14) authorizes the Secretary to provide loan modifications and partial claims. Again, Plaintiff alleges that the Secretary and RHS violated the APA by failing to require Chase to participate in such a loss mitigation program.

The Federal Defendants' motion to dismiss is before the Court. ECF No. 29. The Federal Defendants allege generally that the Court lacks subject matter jurisdiction over Plaintiff's first, fourth, sixth, and seventh causes of action. More specifically, the Federal Defendants argue that the Court lacks jurisdiction over the first and fourth causes of action because the APA does not extend jurisdiction to federal courts to review agency actions that are "committed to agency discretion by law" and that Plaintiff lacks standing to assert her first, sixth, and seventh causes of action because she has not suffered an injury-in-fact and, even assuming a legally cognizable injury attributable to her first cause of action, the relief she seeks would not redress her alleged injury. The Federal Defendants also contend that Plaintiff's first through sixth causes of action fail to state claims on which relief can be granted because the Housing Act's moratorium provision does not apply to guaranteed loans, the specific relief Plaintiff seeks is not required by the applicable APA sections and that the United States Department of Agriculture ("USDA") has complied with the other applicable statutory sections.

Plaintiff responds that the Court has subject matter jurisdiction to review her claims pursuant

to the National Housing Goals, 42 U.S.C. § 1441a, and that she has been injured by RHS's failure

to extend moratorium relief and due process. ECF No. 35. Moreover, Plaintiff contends that she has

adequately stated claims upon which relief can be granted because the National Housing Goals limit

RHS's discretion, RHS is required to extend moratorium relief to guaranteed borrows, and RHS is

obligated to refinance guaranteed loans, to implement an assignment program, to implement a loss

mitigation program, and to implement a mortgage modification and partial claims program. Plaintiff

also argues that she has a statutory right to an administrative due process hearing.

## I.   Procedural History

Plaintiff filed a motion for a temporary restraining order and preliminary injunction on

February 8, 2011, to enjoin the non-judicial foreclosure sale of her home scheduled for February 17,

2011. ECF No. 5. Plaintiff contended that the loss of her home and threat of homelessness were

sufficient to justify the grant of a temporary restraining order and preliminary injunction. *See Smith*,

2010 WL 3270116, at *10; *Sayo, Inc*., 2006 WL 3240706 at *2. Plaintiff claimed she could not be

compensated with monetary damages for "either of these enormous losses." ECF No. 5.  Plaintiff,

however, did not provide evidence that she would not be able to afford alternate housing and did not

explain why monetary compensation would be inadequate should she be required to relocate. The

Court noted that Plaintiff would also retain the right of possession to the property for the statutory

redemption period of six months after the foreclosure sale.  The Court concluded that Plaintiff had

not shown that irreparable harm would occur at the time of the foreclosure sale and denied Plaintiff's

motion without prejudice (ECF No. 8). *Livonia Prop. Holdings v. 12840-12976 Farmington Rd.*

*Holdings*, 717 F. Supp. 2d 724, 740-41 (E.D. Mich. 2010).  Plaintiff then filed a renewed motion for

a temporary restraining order (ECF No. 9) and notice of appeal of the Court's order denying her

original motion for a temporary restraining order (ECF No. 14).   On March 1, 2011, the Court entered the parties' stipulation and order withdrawing Plaintiff's renewed motion for an expedited temporary restraining order because the Chase Defendants agreed to adjourn the foreclosure sale during the pendency of the litigation.   ECF No. 24. Plaintiff also filed a motion for voluntary dismissal of her appeal, and her appeal was dismissed from the United States Court of Appeals for the Sixth Circuit on February 25, 2011.

Chase filed a motion for judgment on the pleadings, contending that there is no private right of action against it under the Doug Bereuter Section 502 Single Family Housing Loan Guarantee Act (the "Guarantee Act"), that it does not owe a fiduciary duty to Plaintiff, and that it took all mitigation efforts suggested under the Act.   ECF No. 45. Plaintiff responded that the Chase Defendants are necessary parties, clarified that the claims against Chase were not based on a violation of the Guarantee Act, and asserted that she had sufficiently stated a claim for breach of fiduciary duty.  ECF No. 48.  The Court granted Chase's motion for judgment on the pleadings on December 20, 2011 because Plaintiff had not pled adequate facts to demonstrate the extraordinary situation that would create a fiduciary duty to Plaintiff under Michigan law. ECF No. 54. Plaintiff filed a motion for reconsideration of the Court's December 20, 2011, which is currently pending. ECF No. 55. Plaintiff's motion for reconsideration suggests that dismissing the Chase Defendants was error. Plaintiff contends that the Chase Defendants may be maintained as necessary parties to the case against the Federal Defendants even if Plaintiff does not state a claim against the Chase Defendants.  *Id.*

A hearing was held on October 26, 2011 to address the Chase Defendants' motion for judgment on the pleadings, and the Court also heard arguments on the Federal Defendants' motion

to dismiss. Federal Defendants' motion to dismiss will be granted and Plaintiff's motion for reconsideration of the Court's December 20, 2011 order will be denied as moot.

## II. Facts

Plaintiff attached her closing statement to her complaint reflecting that her loan was closed on July 11, 2008. $39,000 of the $47,000 loan were used to pay the sale price for the home, with most of the balance of the loan being used to finance her settlement charges and a $2,000 "repair escrow."[2] Plaintiff's original monthly principal and interest payment was $499.16, but it was later increased to $651.00 for reasons that are not explained. *Id.* ¶ 29. At the time she received the loan, Plaintiff was employed by Schnepps Health Care Center as a certified nursing assistant but shortly after closing the loan, she became pregnant with her third child. *Id.* ¶ 33. Plaintiff was injured at work in November 2008 when a patient kicked her in the stomach. She was prescribed bed rest for the duration of her pregnancy. *Id.* ¶ 34. Plaintiff received worker's compensation from January 2009 through April 2009 when her child was born. *Id.* ¶ 35.

Plaintiff realized that she would be unable to make payments on her loan in May 2009 because of her loss of income and contacted Chase to discuss mitigation options. *Id.* ¶¶ 36, 38. Plaintiff was advised that she was not eligible for any mitigation options because she had insufficient income. *Id.* ¶ 38.

Plaintiff alleges that in March 2010, she contacted "Ms. Teagen Lefere, a Homeownership Counselor at Listening Ear Crisis Center, for assistance in seeking a loan modification or other loss

---

[2] In addition to the routine closing costs, Plaintiff's closing statement itemized the additional closing expenses:
-Loan origination fee to Affordable Mortgage of Michigan:      $942
-Application/Processing fee to Affordable Mortgage of Michigan:    $471
-RO Guarantee Fee to Rural Development:      $942
-Funding fee to J.P. Morgan Chase Bank, N.A.      $460
-Lender processing fee to J.P. Morgan Chase Bank, N.A.    $175

mitigation alternatives from Chase." *Id.* ¶ 40. Then, from "March 2010 through December 2010, the homeownership counselor, on behalf of Ms. Sheldon, contacted Chase numerous times requesting a loan modification and other assistance." *Id.* ¶ 41. Plaintiff further states that Chase requested that she submit financial documents to be considered for a loan modification on several occasions, and that Plaintiff and Ms. Lefere supplied the requested documentation demonstrating her income, her significant other's income, bank statements, employment status, etc. *Id.* ¶ 42. Plaintiff was then advised that she was "not eligible for assistance because her income is too low and because her loan is guaranteed by RHS." *Id.* ¶ 43. She was not offered a moratorium on her mortgage payments, an opportunity to reamortize or refinance her loan, or an opportunity to have her loan assigned to RHS and then, presumably rewritten on more favorable terms. As of December 21, 2010, Chase claimed that the amount past due on Plaintiff's loan was $12,207.05 exclusive of any legal fees that Chase may claim due and any amounts due since that date. Plaintiff alleges that RHS had significant involvement in the decisions regarding her request for loan loss mitigation, but did not inform Plaintiff of this involvement.

### III.    Section 502 Guaranteed Rural Housing Loan Program

In the Housing Act of 1949, Congress established a national housing policy with three objectives. Pub. L. No. 81-171, 63 Stat. 413 (1949). The first objective was to eliminate housing shortages through housing production and related community development. 42 U.S.C. § 1441. The second objective was to clear slums and blighted areas. *Id.* Finally, Congress aimed to achieve the goal of "a decent home and suitable living environment for every American family." *Id.*

RHS is a part of Rural Development in the USDA and operates a broad range of programs that were formerly administered by the Farmers Home Administration to support affordable housing

and community development in rural areas. Through Section 502 of the Housing Act of 1949, 42 U.S.C. § 1472, RHS provides low-and very-low income people living in rural areas with the opportunity to own a home by a loan made from the Secretary directly to the loan applicant. *See* 42 U.S.C. § 1472(a). Section 502 loans are primarily used to help low-income individuals or households purchase homes in rural areas and the funds can be used to build, repair, renovate or relocate a home, or to purchase and prepare sites, including providing water and sewage facilities. Rural Housing Direct Loans, www.rurdev.usda.gov/rhs/sfh/brief_rhdirect.htm (last visited March 13, 2012). Ginnie Mae, which is a division or affiliate of the U.S. Department of Housing and Urban Development, guarantees securities secured by pools of mortgage loans insured by RHS in addition to loans initiated by the U.S. Department of Veterans Affairs and the Federal Housing Administration.

The RHS single family guaranteed loan program, in contrast to the direct loan program, was authorized by Section 502(h) of the Housing Act of 1949, 42 U.S.C. § 1472(h), and enacted as part of the Cranston-Gonzales National Affordable Housing Act of 1990. Pub. L. 101-625 (1990). Its purpose was to extend home loan financing to rural households to further the goals and purposes of the Housing Act of 1949, namely the provision of decent, safe and sanitary housing to every American household. 42 U.S.C. § 1441. The guaranteed loan program "facilitates home ownership for low-to moderate-income borrowers in rural areas and non-metropolitan communities who are unable to obtain conventional home mortgage financing." Pub. L. 108-285, 3(a), 118 Stat. 917 (2004). It provides financing priority to borrowers who are first time homeowners, 42 U.S.C. § 1472(h)(5), and is targeted to areas that have a demonstrated need for additional sources of mortgage financing for low- and moderate-income households, 42 U.S.C. § 1472(h)(11). RHS direct loans are

made and serviced by the USDA staff whereas the guaranteed loans are mortgages extended and services by other lenders.

The Secretary of Agriculture is authorized to guarantee loans made by lenders other than the United States in an amount equal to 90 percent of the loan. Such guarantees must be made in accordance with 42 U.S.C. § 1487(d). Borrowers generally must meet the same eligibility requirements as applicants for direct loans, except that the maximum income can be as high as 115 percent of area median for an unsubsidized loan and only low-income borrowers are eligible for subsidized guaranteed loans. *See* 42 U.S.C. § 1487(h)(2); 7 C.F.R. §§ 1980.345, 1980.390. Like direct Section 502 loans, the level of guaranteed loan activity is limited by congressional appropriations and RHS gives preference to applications from first-time home buyers or veterans, their spouses, or children of deceased servicemen. 7 C.F.R. § 1980.353(b). Displaced homemakers and single parents are considered first-time home buyers even though they may have owned a previous home with a spouse. *Id.* No down payment is required. According to RHS guidance, if an applicant has been generating income from full-time or part-time income for two or more years, a lender may consider the income to be stable and dependable for purposes of determining the applicants' loan repayment ability. Notice RD AN No. 4474 (1980-D), September 17, 2009.

Guaranteed loans are provided for a term of thirty years and the loan is required to have a fixed interest rate. The rate is negotiable by the lender and borrower, subject to any established usury limit and it cannot exceed the lender's published rate for loans guaranteed by the Department of Veterans Affairs or the current Federal National Mortgage Association rate, whichever is higher. 7 C.F.R. §§ 1980.320-.321. The maximum lender's loss reimbursable by RHS under the guarantee will be the lesser of (1) 90 percent of the principal amount of the loan to the borrower, or (2) 35

percent of the amount of the loan plus any additional loss sustained by the lender up to 85 percent of the remaining 65 percent. 7 C.F.R. § 1980.322.   A borrower may not be released from liability remaining on the note for a guaranteed loan, even if the property is sold. 42 U.S.C. § 1472(h)(10).

If a borrower of a loan guaranteed under the Guaranteed Loan Program cannot make a loan payment, the lender is required to assist the borrower or liquidate the loan. *See* 7 C.F.R. §§ 1980.309(f); 1980.371; 1980.374. If a borrower is 90 days delinquent on a loan, and the lender wishes to resolve the delinquency by some method other than foreclosure (e.g., loan modification), the lender submits a servicing plan to RHS for approval. *Id.* § 1980.374(d). RHS may approve or reject the servicing plan. *Id.* If a lender concludes that a loan account needs to be liquidated because of one or more defaults that the borrower cannot or will not cure within a reasonable time period, the lender is to notify RHS of the decision to liquidate. *Id.* § 1980.374.

Congress added Section 502(h)(17) to the Housing Act in December 2000, which provides that the Secretary shall, upon the request of the borrower, guarantee a loan that is made to refinance an existing guaranteed loan but the Secretary may establish limitations on the number of these refinanced loans. *See* Pub. L. No. 106-569, Title VII, § 701, 114 Stat. 2944, 3013 (2000); *see also* Section 502(h)(17), 42 U.S.C. § 1472(h)(17). Since 2001, USDA has published a series of Administrative Notices ("ANs") implementing Section 502(h)(17), and the current notice is available online. *See* RD Administrative Notice No. 4549, Single Family Housing Guaranteed Loan Program Refinancing Single Family Housing Loans Section 502 Direct and Guaranteed, at 1, available at http://www.rurdev.usda.gov/SupportDocuments/an4549.pdf. The present notice provides: "The [Single Family Housing Guaranteed Loan Program] offers existing Section 502 Direct and Guaranteed loan program borrowers the opportunity to refinance their mortgage with a

Section 502 Guaranteed loan." However, refinanced loans under this program "may not be used as a loss mitigation measure for loans that are presently not performing or for borrowers who are not current on their existing [direct or guaranteed] loan." *Id.* at 4. This limitation, which is authorized by Section 502(h)(17)(F), suggests that Plaintiff is not eligible for refinancing under this program.

The USDA "encourages Lenders and delinquent borrowers to explore an acceptable alternative to foreclosure to reduce loss and expenses of foreclosure," 7 C.F.R. § 1980.374(d), and provides a Loss Mitigation Guide for the use of lenders that describes different loss mitigation actions, and the conditions under which such actions are appropriate. See Loss Mitigation Guide, available at www.rurdev.usda.gov/regs/an/an4433.pdf (providing for actions such as early intervention, such as default counseling for borrowers; special forbearance agreements; loan modifications; preforeclosure sales; and deeds in lieu of foreclosure). While the Federal Defendants acknowledge that the statutory provisions that Plaintiff alleges provide a basis for the relief she seeks, the USDA believes that the provisions on which Plaintiff relies either do not apply to guaranteed loans or that it already has complied with the applicable statutory sections.

**IV.   Overview of the APA and its Application to Plaintiff's Counts I through VI**

Six of Plaintiff's claims involve assertions that RHS failed to take action with respect to guaranteed loan loss mitigation options that it was required to take. The Administrative Procedures Act ("APA") authorizes suit by "[a] person suffering [a] legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Where no other statute provides a private right of action, the "agency action" complained of must be "final agency action." § 704. "[A]gency action" is defined in § 551(13) to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof,

-11-

or failure to act."

The APA provides relief for a failure to act in § 706(1): "The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." [3] A claim for a "failure to act" pursuant to § 706(1) is not the same thing as a "denial" pursuant to § 706(2). "The latter is the agency's act of saying no to a request; the former is simply the omission of an action without formally rejecting a request-for example, the failure to promulgate a rule or take some decision by a statutory deadline." *Norton v. Southern Utah Wilderness Alliance* ("*SUWA*"), 542 U.S. 55, 63 (2004).

Courts do not have subject matter jurisdiction to review agency actions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *Lincoln v. Vigil*, 508 U.S. 182  (1993). An agency action is committed to agency discretion by law if the statute does not provide a "meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1326 (6th Cir.1993).  Judicial review is only available where there are "standards, definitions, or other grants of power [that] deny or require action in given situations . . . ." *Diebold v. United States*, 947 F.2d 787, 795 (6th Cir. 1991). A meaningful standard does not exist where the applicable law is so broadly drawn that the

---

[3]Plaintiff argued at the October 26, 2011, hearing on the Federal Defendants' motion to dismiss and in her response to the Federal Defendants' motion, that she would also like to assert claims pursuant to Section 706(2) of the APA which provides that the reviewing court shall hold unlawful and set aside agency action, findings and conclusions on various grounds.  Plaintiff contends that she is pursuing claims under § 706(2) because of the agency's "action" of not implementing regulations consistent with the National Housing Goals in 42 U.S.C. § 1441. Plaintiff "cannot seek wholesale improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made. Under the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes it harm" in order to plead a claim pursuant to § 706(2). *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 891 (1990). Moreover, Plaintiff's complaint only references Section 706 of the APA, with no reference to either subsection (1) or (2), and does not allege any claim related to 42 U.S.C. § 1441. Plaintiff cannot assert a claim based on 42 U.S.C. § 1441 for the first time in an opposition brief. *See Munson v. Countrywide Home Loans*, 2008 WL 5381866, at *5 (E.D. Mich. Dec. 17, 2008). Plaintiff's claims are thus appropriately considered under APA Section 706(1) because she is challenging the agency's failure to act in order to compel action unlawfully withheld or unreasonably delayed.

court has no standard or substantive priorities against which to measure an agency's discretion. *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1127 (6th Cir. 1996) (citing *Community Action of Laramie County, Inc. v. Bowen*, 866 F.2d 347, 353 (10th Cir. 1989)).

"[T]he only agency action that can be compelled under the APA is action legally *required*." *SUWA*, 542 U.S. at 64 (emphasis in original). Therefore, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Id.* at 64 (emphasis in original). This limitation "rules out judicial direction of even discrete agency action that is not demanded by law." *Id.* at 65. Rather, "§ 706(1) [of the APA] empowers a court only to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing how it shall act." *SUWA*, 542 U.S. at 64.

### III.    Standard of Review

#### A.    12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may take the form of either a facial or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994). Facial attacks challenge the sufficiency of the pleadings themselves. *Id.* Factual attacks, on the other hand, challenge the factual existence of subject matter jurisdiction, regardless of what is or might be alleged in the pleadings. *Id.*

When adjudicating a motion to dismiss based upon a facial attack, the Court must accept all material allegations of the complaint as true and must construe the facts in favor of the non-moving party. *Ritchie*, 15 F.3d at 598 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)). In contrast, a factual attack contests the validity of the facts alleged as support for subject-matter jurisdiction. *Ritchie*, 15 F.3d at 598. With a factual challenge, no presumption of truthfulness arises for either

-13-

party, and the court must weigh the evidence to determine its power to hear the case. *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). The court may consider both the pleadings and evidence not contained in the pleadings. *Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000).

## B.   12(b)(6) Motion to Dismiss for Failure to State a Claim

The court examines the legal sufficiency of the plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6). *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir.1993). When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, ---, 129 S.Ct. 1937, 1949 (2009). Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and

-14-

common sense." *Id.* at 1950. The Sixth Circuit has held that a court may consider allegations contained in the complaint, as well as exhibits attached to or otherwise incorporated in the complaint, all without converting a motion to dismiss to a motion for summary judgment. Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

The Federal Defendants move for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may be based on either a facial attack or a factual attack on the allegations of the complaint. *Tri-Corp Mgmt. Co. v. Praznik*, 33 F. App'x 742, 745 (6th Cir. 2002). When the Court reviews a factual attack on subject matter jurisdiction, no presumption of truthfulness applies to the factual allegations of the complaint. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). The Court may rely on affidavits or any other evidence properly before it and has wide latitude to collect evidence to determine the issue of subject matter jurisdiction. *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986). A plaintiff must demonstrate jurisdiction in order to survive the motion. *Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A district court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). This assertion does not hold true, however, for legal conclusions, including legal conclusions couched as factual allegations, or for unwarranted factual inferences. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 405-06 (6th Cir. 1998). To survive a motion to dismiss under Rule 12(b)(6), the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v.*

-15-

*Twombly*, 550 U.S. 544, 555 (2007). Although the complaint need not contain "heightened fact pleading of specifics," it must provide "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner*, 108 F.3d at 88 (citation omitted). Courts may consider "public records [and] matters of which a court may take judicial notice" on a Rule 12(b)(6) motion. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated in part on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

### IV.    Discussion

#### A.    Dismissal of Plaintiff's First and Fourth Claims for Lack of Subject Matter Jurisdiction

#### 1.    Plaintiff's First Cause of Action

Plaintiff's first claim is that the Federal Defendants failed to comply with Section 505 of the Housing Act by failing to extend, or require chase to extend, to Plaintiff a moratorium for repayment of her loan.  Section 505 of the Housing Act of 1949, 42 U.S.C. § 1475, Congress authorized the Secretary of Agriculture to extend a moratorium on mortgage and interest payments to Section 502 loan borrowers.[4] The moratorium can be extended at any time that a loan is outstanding upon a

---

[4]Section 505(a)(1) reads, in full:
During any time that any such loan is outstanding, the Secretary is authorized under regulations to be prescribed by him to grant a moratorium upon the payment of interest and principal on such loan for so long a period as he deems necessary, upon a showing by the borrower that due to circumstances beyond his control, he is unable to continue making payments of such principal and interest when due without unduly impairing his standard of living. In cases of extreme hardship under the foregoing circumstances, the Secretary is further authorized to cancel interest due and payable on such loans during the moratorium. Should any foreclosure of such a mortgage securing such a loan upon which

-16-

showing by the borrower that, due to circumstances beyond his or her control, he or she is unable to continue making payments of such principal and interest when due without unduly impairing her standard of living. Plaintiff asserts that the Secretary and RHS have never implemented moratoria for Section 502 guaranteed borrowers. Importantly, Section 505 provides that the Secretary of Agriculture is "authorized" to extend a moratorium, which "can" be extended at any time if appropriately based on the borrower's circumstances.

As previously explained, the APA does not permit judicial review of agency actions that Congress committed to agency discretion by law. 5 U.S.C. § 701(a)(2). 42 U.S.C. § 1475(a) provides, in relevant part, that "[d]uring any time that any such loan is outstanding, the Secretary is authorized under regulations to be prescribed by him to grant a moratorium upon the payment of interest and principal on such loan for so long a period as he deems necessary. . . ." The statutory language does not mandate agency action; it authorizes the Secretary to take, or not to take, action he deems appropriate under the regulations he or she is obliged to promulgate. Although agency action is subject to a presumption of reviewability under 5 U.S.C. § 706(2)(A)'s abuse of discretion standard, "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ("law") can be taken to have "committed" the decisionmaking to the agency's judgment absolutely." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). "A meaningful standard does not exist where the applicable law is so broadly drawn that the court has no standard or substantive priorities against which to measure an agency's discretion." *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1127 (6th Cir. 1996)(citation omitted). Section 1475(a) only requires the USDA to promulgate regulations that

a moratorium has been granted occur, no deficiency judgment shall be taken against the mortgagor if he shall have faithfully tried to meet his obligation.

authorize it to act, or not to act, without providing any standard for making that decision. Because there is no guidance for the Court by which to evaluate the agency's discretion to determine the circumstances under which it will grant moratoria, that decision is committed to agency discretion by law and is not subject to judicial review.

Even if the Court did have subject matter jurisdiction, Plaintiff's first claim would still be subject to dismissal because the USDA has reasonably interpreted Section 505 not to apply to Section 502 guaranteed loans "When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue." *Chevron USA v. Natural Res. Def. Council*, 467 U.S. 837, 842 (1984). In making this inquiry, the court employs "the traditional tools of statutory construction," *see id.* at 843 n.9, including "examination of the statute's text, legislative history, and structure[,] as well as its purpose," *Bell Atl. Tel. Cos. v. FCC*, 131 F.3d 1044, 1047 (D.C. Cir. 1997) (citations omitted). "In determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning – or ambiguity – of certain words or phrases may only become evident when placed in context." *FDA v. Brown & Williamson Tobacco Corp*., 529 U.S. 120, 132 (2000). Additionally, "courts have. . . recognized that a statute may be ambiguous if its application leads to an irrational or absurd result." *Conservation Law Found. v. Busey*, 79 F.3d 1250, 1267 (1st Cir. 1996) (citing *Ewing v. Rodgers*, 826 F.2d 967, 970 n.3 (10th Cir. 1987); *In re Rodman*, 792 F.2d 125, 128 n.8 (10th Cir. 1986); *United States v. Real Estate Known as 916 Douglas Ave*., 903 F.2d 490, 492 (7th Cir. 1990)).

Second, if the reviewing court determines that "the statute is silent or ambiguous with respect

to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. Congress passed the moratorium provision as part of Title V of the Housing Act, which was entitled "Financial Assistance by the Secretary of Agriculture." Housing Act of 1949, Pub. L. No. 81-171, Title V, 63 Stat. 413, 432-39 (1949). When enacted, Title V of the Housing Act did not authorize the USDA to act as a guarantor of loans by third parties, but only to extend direct loans to individuals. *See id.* In particular, Section 502 only authorized the Secretary of the USDA to provide direct loans to farm owners. *See* 63 Stat. at 433-34. Thus, when originally enacted, the term "any such loan" in the moratorium provision referred only to direct loans made by the USDA. *See id.* at 432-34.

As earlier noted, Congress added the guaranteed loan program by its passage of the Cranston-Gonzalez National Affordable Housing Act in 1990. Pub. L. No. 101-625, 104 Stat. 4079 (1990). Section 706 of the Act added subsection (h) to 42 U.S.C. § 1472, which authorized the USDA to provide guaranteed loans made by third-party lenders to individuals who sought to buy a single-family residence in a rural area. Pub. L. No. 101-625, § 706, 104 Stat. 4079, 4284-86. However, when it added this new subsection, Congress did not specify whether the earlier enacted moratorium provision's reference to "any such loan," 42 U.S.C. § 1475, included the guaranteed loans authorized by the new subsection, 42 U.S.C. § 1472(h). Congress's amendment thus introduced an ambiguity as to whether "any such loan" referred only to direct loans made by the USDA as the statute originally read or also included loans guaranteed by the USDA through the new program added in 1990.

The present case invokes *Chevron*'s second prong. Here, Congress has expressly delegated to the USDA the authority to "make such rules and regulations as [it] deems necessary to carry out

the purposes of" the Housing Act. 42 U.S.C. § 1480(k). The agency provided its interpretation as to whether the moratorium provision in 42 U.S.C. § 1475 includes guaranteed loans in a Federal Register explanation of a final rule that amended the USDA's regulation implementing its guaranteed loan program. Final Rule, Rural Housing Loans, 56 Fed. Reg. 15748, 15752 (April 17, 1991) (codified at 7 C.F.R. pt. 1980). The agency explained that the statutes do not mandate that the rights to certain types of servicing relief afforded to direct loan program participants extend to guaranteed loans. *Id*.

As a statutory interpretation expressed during the promulgation of rulemaking authority expressly granted by Congress, the USDA's interpretation warrants *Chevron* deference because the agency reasonably interpreted the statute. As explained above, unlike the USDA's direct or "insured" loans, its guaranteed loans are made and serviced by private lenders, not by the USDA. Thus, it is a reasonable and permissive construction of the statute to decline to extend the moratorium provision to include a guaranteed loan, which is "the lender's loan, not [the USDA's] loan." *Id.* Plaintiff has not provided any legislative history suggesting that Congress intended the relief afforded by Section 505 be extended to guaranteed, as opposed to direct, borrowers and the USDA has interpreted Section 505 to not apply to Section 502 guaranteed loans. Moreover, the language only grants authority to the Secretary, not to guaranteed lenders, suggesting that the remedy afforded by Section 505 is available only to borrowers from the USDA. As a reasonable construction of an ambiguous statute, the agency's interpretation is entitled to deference. *Chevron*, 467 U.S. at 843. Plaintiff's first cause of action will thus be dismissed for lack of subject matter jurisdiction.

### 2.    Plaintiff's Fourth Cause of Action

Plaintiff's fourth cause of action alleges that the USDA has failed to enforce Section 502(h)(13) of the Housing Act, 42 U.S.C. § 1472(h)(13), against Chase. Compl. ¶¶ 23, 60.  Section 502(h)(13) was added to the Housing Act in 2009, Pub. L. 111-22, Div. A, § 101(a) (2009), and provides:

> Upon default or imminent default of any mortgage guaranteed under this subsection, mortgagees shall engage in loss mitigation actions for the purpose of providing an alternative to foreclosure (including actions such as special forbearance, loan modification, pre-foreclosure sale, deed in lieu of foreclosure, as required, support for borrower housing counseling, subordinate lien resolution, and borrower relocation), as provided for by the Secretary.

Even if this section were interpreted as requiring the USDA to take action against particular lenders to require specific loss mitigation actions, the USDA's decision to not enforce this section against a particular lender is committed to agency discretion by law and not subject to review under the APA. *Heckler*, 470 U.S. at 830; *see also Gillis v. HHS*, 759 F.2d 565, 575-77 (6th Cir. 1985) (concluding that "[t]he mechanism by and extent to which HHS 'monitors' as well as 'enforces' compliance fall squarely within the agency's exercise of discretion," and therefore an alleged failure to monitor and enforce these obligations was not reviewable under the APA).

The language of the statutory section makes clear that the Secretary has authority to establish the terms upon which loan mitigation can be provided, and the APA precludes review of the USDA's action or inaction.  The USDA's decision to enforce any specific loan mitigation option is clearly committed to the agency's discretion under the language of the Section 502(h)(13). Section 502(h)(13) identifies the statutory objective to be achieved, but does not provide any particular action, or criteria for the Court to apply to evaluate any action by the Secretary. It does not mandate, with the clarity necessary to support judicial oversight, that the Secretary implement specific loss

-21-

mitigation programs if the borrower is displeased with the loss mitigation options provided by the mortgagee. Plaintiff's fourth cause of action will also be dismissed for lack of subject matter jurisdiction.

**B.    Dismissal of Plaintiff's Second, Third, Fifth, Sixth and Seventh Causes of Action for Failing to State a Claim Upon Which Relief Can Be Granted**

**1.    Plaintiff's Second Cause of Action**

Plaintiff's second cause of action asserts that the Federal Defendants violated the APA by failing to implement provisions of Sections 501(a), 502(h)(9) and 502(h)(17) of the Housing Act, violating Plaintiff's right to have her guaranteed loan refinanced by another RHS guaranteed loan or by a direct and subsidized RHS loan. Section 501(a), 42 U.S.C. § 1471, authorizes the Secretary to refinance a home that, if not refinanced, would result in loss of the home[5]. Under Section

---

[5]Section 501(a) states as follows:

The Secretary of Agriculture (hereinafter referred to as the "Secretary") is authorized, subject to the terms and conditions of this subchapter, to extend financial assistance, through the Farmers Home Administration, (1) to owners of farms in the United States and in the Territories of Alaska and Hawaii and in the Commonwealth of Puerto Rico, the Virgin Islands, the territories and possessions of the United States, and the Trust Territory of the Pacific Islands, to enable them to construct, improve, alter, repair, or replace dwellings and other farm buildings on their farms, and to purchase buildings and land constituting a minimum adequate site, in order to provide them, their tenants, lessees, sharecroppers, and laborers with decent, safe, and sanitary living conditions and adequate farm buildings as specified in this subchapter, and (2) to owners of other real estate in rural areas for the construction, improvement, alteration, or repair of dwellings, related facilities, and farm buildings and to rural residents, including persons who reside in reservations or villages of Indian tribes, for such purposes and for the purchase of buildings and the purchase of land constituting a minimum adequate site, in order to enable them to provide dwellings and related facilities for their own use and buildings adequate for their farming operations, and (3) to elderly or handicapped persons or families who are or will be the owners of land in rural areas for the construction, improvement, alteration, or repair of dwellings and related facilities, the purchase of dwellings and related facilities and the purchase of land constituting a minimum adequate site, in order to provide them with adequate dwellings and related facilities for their own use, and (4) to an owner described in clause (1), (2), or (3) for refinancing indebtedness which--

(A) was incurred for an eligible purpose described in such clause, and

(B)(i) if not refinanced, is likely to result (because of circumstances beyond the control of the applicant) at an early date in the loss of the applicant's necessary dwelling or essential farm service buildings, or

-22-

502(h)(9), 42 U.S.C. § 1472(h)(9), a Section 502 guaranteed loan may not be refinanced for a term exceeding 30 years.  Section 502(h)(17), 42 U.S.C. § 1472(h)(13)[6], outlines the guarantees for refinancing loans, if the borrower requests to refinance an existing loan.  The language of Sections 501(a) and 502(h)(9), where relief is afforded, *authorizes* the Secretary to refinance a guaranteed loan but does not identify the circumstances where it may be appropriate or otherwise require it.  In addition, Plaintiff has not identified any violation by the USDA of Section 502(h)(17) with respect

---

(ii) if combined (in the case of a dwelling that the Secretary finds not to be decent, safe, and sanitary) with a loan for improvement, rehabilitation, or repairs and not refinanced, is likely to result in the applicant's continuing to be deprived of a decent, safe, and sanitary dwelling.

[6]Section 502(h)(17) provides the following guarantees for refinances loans:

(A) In general
Upon the request of the borrower, the Secretary shall, to the extent provided in appropriation Acts and subject to subparagraph (F), guarantee a loan that is made to refinance an existing loan that is made under this section or guaranteed under this subsection, and that the Secretary determines complies with the requirements of this paragraph.

(B) Interest rate
To be eligible for a guarantee under this paragraph, the refinancing loan shall have a rate of interest that is fixed over the term of the loan and does not exceed the interest rate of the loan being refinanced.

(C) Security
To be eligible for a guarantee under this paragraph, the refinancing loan shall be secured by the same single-family residence as was the loan being refinanced, which shall be owned by the borrower and occupied by the borrower as the principal residence of the borrower.

(D) Amount
To be eligible for a guarantee under this paragraph, the principal obligation under the refinancing loan shall not exceed an amount equal to the sum of the balance of the loan being refinanced and such closing costs as may be authorized by the Secretary, which shall include a discount not exceeding 200 basis points and an origination fee not exceeding such amount as the Secretary shall prescribe.

(E) Other requirements
The provisions of the last sentence of paragraph (2) and paragraphs (3), (6), (7)(A), (8), (10), (13), and (14) shall apply to loans guaranteed under this paragraph, and no other provisions of paragraphs (2) through (15) shall apply to such loans.

(F) Authority to establish limitation
The Secretary may establish limitations on the number of loans guaranteed under this paragraph, which shall be based on market conditions and other factors as the Secretary considers appropriate.

to its implementation of the statutory provision.

### 2.    Plaintiff's Third Cause of Action

Plaintiff's third cause of action alleges that the Federal Defendants violated the APA by failing to implement statutory authorities under Sections 502(h)(15), 42 U.S.C. § 1472(h)(15)[7],

---

[7]Section 502(h)(15) provides the following regarding assignment of guaranteed loans:

(A) Program authority

The Secretary may establish a program for assignment to the Secretary, upon request of the mortgagee, of a mortgage on a 1- to 4-family residence guaranteed under this chapter.

(B) Program requirements

    (i) In general

    The Secretary may encourage loan modifications for eligible delinquent mortgages or mortgages facing imminent default, as defined by the Secretary, through the payment of the guaranty and assignment of the mortgage to the Secretary and the subsequent modification of the terms of the mortgage according to a loan modification approved under this section.

    (ii) Acceptance of assignment

    The Secretary may accept assignment of a mortgage under a program under this subsection only if--

        (I) the mortgage is in default or facing imminent default;

        (II) the mortgagee has modified the mortgage or qualified the mortgage for modification sufficient to cure the default and provide for mortgage payments the mortgagor is reasonably able to pay, at interest rates not exceeding current market interest rates; and

        (III) the Secretary arranges for servicing of the assigned mortgage by a mortgagee (which may include the assigning mortgagee) through procedures that the Secretary has determined to be in the best interests of the appropriate guaranty fund.

(C) Payment of guaranty

Under the program under this paragraph, the Secretary may pay the guaranty for a mortgage, in the amount determined in accordance with paragraph (2), without reduction for any amounts modified, but only upon the assignment, transfer, and delivery to the Secretary of all rights, interest, claims, evidence, and records with respect to the mortgage, as defined by the Secretary.

(D) Disposition

After modification of a mortgage pursuant to this paragraph, and assignment of the mortgage, the Secretary may provide guarantees under this subsection for the mortgage. The Secretary may subsequently--

    (i) re-assign the mortgage to the mortgagee under terms and conditions as are agreed to by the

-24-

502(h)(17) and 517, 42 U.S.C. § 1487, to have Plaintiff's loan assigned to RHS and by failing to implement statutory authorities to reamortize her loan.  Under Section 502(h)(15), the Secretary, once again, is *authorized* to establish a program for guaranteed lenders to assign loans to the Secretary, including loans upon which borrows have defaulted, in return for payment to the lender of the balance outstanding on the note. Section 502(h)(15) does not mandate the Secretary's action much less seek to provide terms a court could enforce. Furthermore, Section 502(h)(17) applies to refinancing and not to assignment or reamortization and Section 517 only applies to insurance of loans and loans offered for sale to the public, which does not apply to Plaintiff.

### 3.    Plaintiff's Fifth Cause of Action

Plaintiff's fifth claim contends that the Federal Defendants violated the APA by failing to require guaranteed lenders to provide loan modifications and partial claims under Section 502(h)(14), 42 U.S.C. § 1472(h)(14)[8]. Section 502(h)(14) does not mandate that the Secretary

---

mortgagee and the Secretary;

(ii) act as a Government National Mortgage Association issuer, or contract with an entity for such purpose, in order to pool the mortgage into a Government National Mortgage Association security; or

(iii) re-sell the mortgage in accordance with any program that has been established for purchase by the Federal Government of mortgages insured under this subchapter, and the Secretary may coordinate standards for interest rate reductions available for loan modification with interest rates established for such purchase.

(E) Loan servicing

In carrying out the program under this subsection, the Secretary may require the existing servicer of a mortgage assigned to the Secretary under the program to continue servicing the mortgage as an agent of the Secretary during the period that the Secretary acquires and holds the mortgage for the purpose of modifying the terms of the mortgage. If the mortgage is resold pursuant to subparagraph (D)(iii), the Secretary may provide for the existing servicer to continue to service the mortgage or may engage another entity to service the mortgage.

[8]Section 502(h)(14) provides the guidelines for payment of partial claims and mortgage modifications, and reads as follows:

The Secretary may authorize the modification of mortgages, and establish a program for payment of a partial

require guaranteed lenders to modify the guaranteed loans or establish partial payment of the guaranteed loan for a loan that is in, or faces, default. The language chosen by Congress is discretionary and reflects Congress's intent that the Secretary exercise his or her specialized judgment. Moreover, to the extent Plaintiff is seeking to have the Federal Defendants comply with Sections the broad statutory mandate contained in § 1441 of the Housing Act– entitled "Congressional declaration of national housing policy" – Plaintiff is asking the Court to "enter [a] general order compelling compliance with [a] broad statutory mandate[]," which cannot form the basis of an APA failure-to-act claim. *SUWA*, 542 U.S. at 66. Because Plaintiff cannot identify a discrete, circumscribed agency action that § 1441 requires the Federal Defendants to take, she

---

claim to a mortgagee that agrees to apply the claim amount to payment of a mortgage on a 1- to 4-family residence, for mortgages that are in default or face imminent default, as defined by the Secretary. Any payment under such program directed to the mortgagee shall be made at the sole discretion of the Secretary and on terms and conditions acceptable to the Secretary, except that--

(A) the amount of the partial claim payment shall be in an amount determined by the Secretary, and shall not exceed an amount equivalent to 30 percent of the unpaid principal balance of the mortgage and any costs that are approved by the Secretary;

(B) the amount of the partial claim payment shall be applied first to any outstanding indebtedness on the mortgage, including any arrearage, but may also include principal reduction;

(C) the mortgagor shall agree to repay the amount of the partial claim to the Secretary upon terms and conditions acceptable to the Secretary;

(D) expenses related to a partial claim or modification are not to be charged to the borrower;

(E) the Secretary may authorize compensation to the mortgagee for lost income on monthly mortgage payments due to interest rate reduction;

(F) the Secretary may reimburse the mortgagee from the appropriate guaranty fund in connection with any activities that the mortgagee is required to undertake concerning repayment by the mortgagor of the amount owed to the Secretary;

(G) the Secretary may authorize payments to the mortgagee on behalf of the borrower, under such terms and conditions as are defined by the Secretary, based on successful performance under the terms of the mortgage modification, which shall be used to reduce the principal obligation under the modified mortgage; and

(H) the Secretary may authorize the modification of mortgages with terms extended up to 40 years from the date of modification.

cannot maintain a claim for agency inaction under that section. Plaintiff's fifth claim will be dismissed.

### 4.    Plaintiff's Sixth and Seventh Causes of Action

Plaintiff's sixth and seventh causes of action will be dismissed because she does not allege any facts demonstrating standing to raise these claims. Article III of the Constitution limits the jurisdiction of federal courts to "cases and controversies." U.S. Const. art. III, § 2. To satisfy this requirement, a plaintiff must demonstrate it has standing to maintain its action. *Allen v. Wright*, 468 U.S. 729, 756 (1984). To satisfy Article III's standing requirement, the plaintiff must show, *inter alia*, that he or she has "suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," and "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted).

Plaintiff contends that her right to  statutory and constitutional due process were violated by the Federal Defendants failing to implement Section 502(h) and Section 510(g) of the Housing Act and Section 271 et seq., of the Agricultural Reorganization Act of 1994 (Count VI) and by the Federal Defendants failing to provide her with notice of adverse decisions made against her or a right to appeal those decisions (Count VII). Section 510(g) of the Housing Act of 1949, 42 U.S.C. § 1480(g), provides the Secretary of Agriculture the power to issue rules and regulations that assure persons whose assistance under Title V of the Housing Act of 1949 is substantially reduced or terminated are given notice and an opportunity to appeal an adverse decision to a person who has authority to reverse the decision.

With respect to Count VII, Plaintiff has not alleged that there is any evidence that the Federal Defendants made any adverse decisions relating to Plaintiff. As provided in Tina Farlow's Declaration, attached as Exhibit 1 to the Federal Defendant's motion to dismiss, the USDA did not receive any servicing plan related to Plaintiff. Plaintiff likewise does not allege that she submitted a servicing plan to the USDA. Plaintiff thus lacks standing to bring a due process claim alleging failure to notify her of any adverse decisions made against her by the Federal Defendants and the right to appeal those decisions.

Furthermore, Section 510(g) of the Housing Act provides, in relevant part, that the Secretary, in carrying out the provisions of the Housing Act,

> shall have the power to. . . issue rules and regulations which assure that . . . persons . . . whose assistance under this subchapter is being substantially reduced or terminated are given written notice of the reasons for denial, reduction or termination and are provided at least an opportunity to appeal an adverse decision[.]

The Federal Defendants did not substantially reduce or terminate assistance to Plaintiff, nor was an adverse decision made by the agency with respect to Plaintiff. *See* Farlow Decl. ¶ 5. Plaintiff argues that this subsection is not limited to decisions made by the Federal Defendants, but extends to her assistance being terminated by virtue of the Chase Defendant's foreclosure. Plaintiff, however, does not allege that she has had any assistance for her guaranteed home loan denied, reduced, or terminated. Her loan is still guaranteed by the USDA, Chase provided loss mitigation assistance to Plaintiff through a forbearance, and the remaining provisions offering further relief are available only at the discretion of the Secretary which must also consider the interest of the United States in ultimately collecting the loan. Because Plaintiff does not demonstrate a cognizable injury under Section 510(g), she lacks standing to bring a claim for violation of this section.

Plaintiff also contends that the Federal Defendants have "fail[ed] to implement, with respect

to Section 502(h) borrowers, . . . Section 271, et seq., of the Agricultural Reorganization Act of 1994 . . . ." Compl. ¶ 64. The provisions Plaintiff cites have been enacted at 7 U.S.C. §§ 6991-6999. See Pub. L. No. 103-354, §§ 271-283, 108 Stat. 3178, 3232-35 (1994). These provisions authorize USDA to establish a National Appeals Division ("NAD") to handle administrative appeals from adverse decisions of certain USDA agencies. These provisions have been implemented with respect to Section 502(h) guaranteed loan borrowers. *See* 7 C.F.R. part 11 (establishing rules of procedure for appeals to NAD); *id.* § 1980.399 (describing the appeal process for RHS administrative decisions to NAD). Plaintiff cannot demonstrate injury by alleging the Federal Defendants have failed to do something that has been done. Accordingly, Plaintiff's sixth cause of action will be dismissed because Plaintiff lacks standing to assert her claim.

### C.   Plaintiff's Motions

Plaintiff filed a motion for leave to file a sur-reply, which will be denied because the Federal Defendant's reply brief does not provide any new arguments that Plaintiff could not have addressed in her response and restates arguments already provided in her response.  More specifically, the sur-reply addresses Plaintiff's disagreements with RHS's arguments regarding lack of subject matter jurisdiction and the applicability of *SUWA* to the instant case. In addition, Plaintiff filed a motion for leave to file a supplemental memorandum to include RHS's participation agreement with private lenders for guaranteed loans that she located on the internet. ECF No. 53. Plaintiff does not explain whether this is the agreement in place between RHS and Chase in the instant case. Even if it were, it should not be considered pursuant to a Rule 12(b)(1) or 12(b)(6) motion to dismiss because it was not included in Plaintiff's original pleadings. Finally, Plaintiff has also filed a motion to strike the declaration of Tina Farlow included as an exhibit to the Federal Defendants' motion to dismiss,

which will be denied. The declaration is appropriate to consider because the Federal Defendants are challenging the factual sufficiency of jurisdiction over Plaintiff's claims pursuant to Rule 12(b)(1). No presumption of truthfulness applies to the factual allegations of a complaint in that circumstance, *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994), and the Court may thus rely on affidavits or declarations to resolve factual disputes raised in a Rule 12(b)(1) motion, *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986).

## V.   Conclusion

Accordingly, it is **ORDERED** that the Federal Defendants' motion to dismiss (ECF No. 29) is **GRANTED**.

It is further **ORDERED** that Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Plaintiff's motion to strike Exhibit 1 to the Federal Defendants' motion to dismiss (ECF No. 36) is **DENIED**.

It is further **ORDERED** that Plaintiff's motion for leave to file a sur-reply (ECF No. 44) is **DENIED**.

It is further **ORDERED** that Plaintiff's motion for leave to file a supplemental memorandum (ECF No. 53) is **DENIED**.

It is further **ORDERED** that Plaintiff's motion for reconsideration (ECF No. 55) is **DENIED AS MOOT**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: March 29, 2012

-30-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 29, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS